UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLEN DAWSON,<br><br>         Plaintiff,<br><br>    v.<br><br>WESTCHESTER COUNTY; ARAMARK CORRECTIONAL SERVICES, LLC; COMMISSIONER JOSEPH K. SPANO; DEPUTY COMMISSIONER LEANDRO DIAZ; ARAMARK FOOD SERVICE DIRECTOR MANUEL MENDOZA; ASSISTANT WARDEN FRANCIS DELGROSSO; ASSISTANT WARDEN KARL VOLLMER; LAW LIBRARIAN K. HEWITT; ARAMARK DIRECTOR DONNA P. BLACKMAN; LAFONDA SPAULDING; CRAIG BOISSY; DARNELL FLAX; CAPTAIN ROBERTS; CAPTAIN WONDA SMITHSON; SERGEANT AZIM; CORRECTIONAL OFFICER CASTRO; AND CORRECTIONAL OFFICER VAL,<br><br>         Defendants. | No. 18-CV-7790 (KMK)<br><br>OPINION & ORDER |

Appearances:

Allen C. Dawson
Marcy, NY
*Pro Se Plaintiff*

Mony Bp Yin, Esq.
Bennett, Bricklin & Saltzburg, LLC
New York, NY
*Counsel for Defendants Aramark Correctional Services, LLC, Manuel Mendoza, Donna Blackman, Darnell Flax, and Craig Boissy*

KENNETH M. KARAS, United States District Judge:

  Pro se Plaintiff Allen Dawson ("Plaintiff"), currently incarcerated at Westchester County Department of Correction ("WCDOC"), brings this Action, under 42 U.S.C. § 1983, against Aramark Correctional Services, LLC ("Aramark"), Aramark Food Service Director Manuel

Mendoza ("Mendoza"), Aramark Food Services Manager Darnell Flax ("Flax"), Aramark Director Donna P. Blackman ("Blackman"), Aramark Line Supervisor Craig Boissy ("Boissy") (collectively "Aramark Defendants" or "Moving Defendants"), Westchester County ("Westchester" or the "County"), Commissioner Joseph K. Spano ("Spano"), Deputy Commissioner Leandro Diaz ("Diaz"), Assistant Warden Francis Delgrosso ("Delgrosso"), Assistant Warden Karl Vollmer ("Vollmer"), Law Librarian K. Hewitt ("Hewitt"), Assistant Warden Lafonda Spaulding ("Spaulding"), Captain Roberts ("Roberts"), Captain Wanda Smithson ("Smithson"), Sergeant Azim ("Azim"), Correctional Officer ("CO") Castro ("Castro"), and CO Val ("Val") (collectively "Defendants"), alleging unconstitutional conditions of confinement in the form of poor food conditions and interference with his access to the Courts. (Compl. (Dkt. No. 2).)[1] Before this Court is Moving Defendants' Motion To Dismiss ("Motion"). (*See* Not. of Mot. (Dkt. No. 30).) For the following reasons, the Motion is granted.

---

[1] Defendants Westchester County, Spano, Diaz, Delgrosso, Vollmer, Spaulding, Roberts, Smithson, Azim, Castro, and Val have all been served but have not timely filed their answers or otherwise responded, and have never appeared in this case. (Dkt. Nos. 8–24.) The Court notes that the Moving Defendants are those involved in Plaintiff's allegations related to the poor food conditions and not his claims regarding interference with his access to the courts. The individuals involved in Plaintiff allegations regarding his access to the courts claims are either Defendants who have failed to appear or individuals who are not named Defendants in this Action. Moving Defendants do not address Plaintiff's access to the courts claims, and the Court will not herein consider dismissing claims against Defendants who have been served but have failed to appear. Plaintiff may consider seeking default judgment against Defendants who have not answered. *See Thompson v. Booth*, No. 16-CV-3477, 2018 WL 4760663, at *12 (S.D.N.Y. Sept. 28, 2018) (stating that the court could enter default judgment against defendants who had been served but had failed to appear); *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 332 (S.D.N.Y. Sept. 9, 2014) (instructing plaintiff to consider seeking a default judgment against a defendant who had been served but failed to appear).

I. Background

A. Factual Background

The following facts are drawn from Plaintiff's Complaint, (Compl.), and are taken as true for the purpose of resolving the instant Motion.

Plaintiff arrived at the WCDOC as a pretrial detainee on May 2, 2018. (Compl. 6.)[2] Plaintiff alleges that the food conditions at WCDOC have been unsanitary since his arrival. (*Id.*) Specifically, Plaintiff alleges that his food is "always cooked [b]loody [a]nd/or pink internally," that the food comes in "minimal portions," and is cold. (*Id.*) He further alleges that the "meal trays have a [b]lack like mold substance on them," and that they "[a]lways have left over [f]oods [f]rom previous [days]." (*Id.*) Plaintiff also alleges that he has found dead flies in his food on approximately six occasions, that the "meal trays are always chipping pieces of the plate . . . into the [f]ood," and that he has found hair in his food on approximately fifteen occasions. (*Id.*) Plaintiff further alleges that the "juice containers [h]ave mold on them," that "inmate workers [d]o not wear gloves, [hair] nets, [or] beard nets" while working with the food, and that "Defendants save old [f]oods and use them to cook [n]ew food." (*Id.*) Plaintiff also alleges that the meals "contain over cooked vegetables, and noodles/rice." (*Id.*)

Plaintiff alleges that he attempted to file a grievance with Sergeant Hogue ("Hogue"), not a party to this Action, but Hogue allegedly told Plaintiff, "we [d]on't accept Aramark grievance[s]." (*Id.* at 7.) Plaintiff alleges that his grievance was refused, but that Spano, Diaz, Mendoza, Delgrosso, Vollmer, Blackman, Spaulding, Boissy, Flax, Smithson, and Azim, who are supervisors at WCDOC, "know that the food . . . is being served [in poor quality] . . . through

---

[2] Plaintiff's filings do not have consistent pagination. To avoid confusion, the Court cites to the ECF-generated page numbers at the top right corner of the relevant page.

other [grievances], lawsuits, complaints, and daily meetings amongst each other where grievances and complaints are discussed."[3] (*Id.*) He also alleges that Defendants Blackman, Aramark, Diaz, Westchester, and Smithson "were deposed in another [lawsuit] and had prior knowledge that the [poor] conditions were in existence, but failed to correct the [p]roblem . . . ." (*Id.*) Plaintiff alleges that defendants Delgrosso, Vollmer, Blackman, Boissy, Mendoza, and Azim "conspired amongst each other to cover the food deprivation occurring at [WCDOC] by lying [in grievance] responses [and] [n]ot conducting proper [i]nvestigations into food related claims." (*Id.*)

Plaintiff alleges that "[a]ll defendants fail to properly train and supervise inmate kitchen workers," and that Hewitt "refuse[d] to allow [him] permission to photo copy this lawsuit because [it is] a [§] 1983 lawsuit and she said that 1983s are contraband [according to Delgrosso.]" (*Id.*) Plaintiff also alleges that Hewitt refused to provide adequate law materials, that the books in the law library are outdated and "torn and old," and that "there is [n]o writing paper, [p]encils or [p]ens within the A-block . . . law library . . ." (*Id.*) Plaintiff further alleges that he attempted to file a grievance about the law materials with Sergeant Conkling ("Conkling"), not a party to this Action, but was refused because that was not an acceptable grievance. (*Id.* at 8.) Plaintiff alleges that he was strip-searched by Castro and Val, and that Castro said sexually explicit things to him. (*Id.*) Plaintiff alleges that he told Castro that he would file a grievance against him, and that Castro said "I'll write you a ticket for threats if you

---

[3] The Court notes that Plaintiff does not list these Defendant supervisors by name. Plaintiff lists these defendants as "Defendants 3, 4, 5, 6, 7, 9, 10, 11, 12, 14, 15," (Compl. 7), which corresponds to a numbered list of defendants on the first two pages of the Complaint, (Compl. 1–2).

file a [grievance]." (*Id.*) Plaintiff alleges that he explained what had happened to Val, who replied by also making sexually explicit statements. (*Id.*)

Plaintiff claims that as a result of the bad food service, he has experienced explosive diarrhea, vomiting, nausea, dehydration, fatigue, loss of energy, weight loss, hunger pangs, and headaches. (Compl. 9.)

B.  Procedural History

Plaintiff filed the operative Complaint and a request to proceed in forma pauperis ("IFP") on August 24, 2018. (*See* Compl.; Request to Proceed in Forma Pauperis (Dkt. No. 1).) The Court granted Plaintiff's IFP request on September 19, 2018. (Dkt. No. 4.) On January 4, 2019, Defendants filed a letter requesting a pre-motion conference in anticipation of filing a Motion To Dismiss. (Letter from Mony B.P. Yin, Esq. to Court (Dkt. No. 28).) The Court granted the request and set a briefing schedule on January 14, 2019. (Dkt. No. 29.) On February 14, 2019, Moving Defendants filed the instant Motion To Dismiss. (Not. of Mot.; Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 31).) Plaintiff has not filed a response. The Court considers the Motion fully briefed.

II.  Discussion

A.  Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir.

2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga Cnty*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).

B. Analysis

Moving Defendants argue, among other things, that Plaintiff's claims against Aramark and the individual Aramark Defendants in their official capacities fail because Plaintiff has not established *Monell* liability, and that Plaintiff's claims against the individual Aramark

7

Defendants fail because Plaintiff has failed to allege their personal involvement. (Defs.' Mem. 8–13.)[4]

### 1. *Monell* Liability

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (italics omitted)). Rather, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008).

---

[4] Aramark Defendants state that for purposes of this Motion only, Aramark concedes to being deemed a state actor, so that the principles articulated in *Monell*, which addresses municipal liability, may be applied to Aramark. (Defs.' Mem. 9 n.1.) The Court notes that in any event, "[i]n determining whether or not a private employer may be held liable in a § 1983 claim, courts are guided by the principles articulated in *Monell* . . . and its progeny." *Torres v. Aramark Food*, No. 14-CV-7498, 2015 WL 9077472, at *10 (S.D.N.Y. Dec. 16, 2015) (citations omitted); *see also Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) ("Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses."); *Gitter v. Target Corp.*, No. 14-CV-4460, 2015 WL 5710454, at *3 n. 4 (S.D.N.Y. Sept. 29, 2015) ("The Second Circuit has extended *Monell's* rationale to private businesses." (citations omitted)). The Court may therefore apply the *Monell* analysis to Aramark.

A plaintiff may satisfy the "policy, custom[,] or practice" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *see also Patterson v. Cnty of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).

Here, Plaintiff summarily alleges that Defendants failed to "properly train and supervise inmate kitchen workers," that Defendants had knowledge of the issues with food preparation, failed to correct them, and conspired to cover them up. (Compl. 7.) Plaintiff alleges that Spano, Diaz, Mendoza, Delgrosso, Vollmer, Blackman, Spaulding, Boissy, Flax, Smithson, and Azim were aware of the problems as a result of complaints, grievances, and lawsuits. (*Id.*) Plaintiff also alleges that Blackman, Aramark, Diaz, Westchester, and Smithson were aware of the problems and failed to correct them, and that Delgrosso, Vollmer, Blackman, Boissy, Mendoza, and Azim "conspired amongst each other to cover the food deprivation occurring at [WCDOC] by lying [in grievance] responses [and] [n]ot conducting proper [i]nvestigations into food related claims." (*Id.*)

With respect to Plaintiff's allegation that Defendants failed to train and supervise kitchen workers, Plaintiff's Complaint does not contain sufficient factual matter to state a claim. Although "a municipality's failure to properly train its employees can under certain circumstances give rise to *Monell* liability, [ ] a claim based on this theory still must be properly

9

pled under *Iqbal*." *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011). To state a claim for municipal liability based on failure to train, Plaintiff must allege facts which support an inference that Aramark failed to train its employees, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries. *See Acosta v. City of New York*, No. 11-CV-856, 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (dismissing *Monell* claim where the plaintiff merely alleged that the city "failed to train its police officers as to display a deliberate indifference," because the plaintiff "failed to set forth factual allegations that would support a plausible inference that the City's 'policies' or 'customs' caused [the] alleged violations of the plaintiff's rights"); *Treadwell v. Cnty. of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016) ("To establish *Monell* liability premised on a failure to supervise, a plaintiff must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." (citation omitted)). To set forth a failure to train claim, "a plaintiff must plausibly allege a specific deficiency in the municipality's training." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015). In particular, a failure to train constitutes a policy or custom that is actionable under § 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Plaintiff's mere claim that Aramark failed to train and supervise its staff is a "boilerplate assertion[ ]" and is insufficient, without more, to state a *Monell* claim. *Araujo v. City of New York*, No. 08-CV-3715, 2010 WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to

train claim where a plaintiff alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in unconstitutional conduct"); *see also Quick v. Westchester Cnty.*, No. 18-CV-243, 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019) (dismissing *Monell* claim where a plaintiff alleged failure to supervise kitchen workers who did not wear hair nets because the complaint was "devoid of any detailed factual allegations" that WCDOC lacked "a relevant training or supervisory program" or that WCDOC "was otherwise deliberately indifferent to food preparation problems"); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539–40 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program").

It is true that a plaintiff may establish deliberate indifference for a failure to supervise and/or discipline claim by showing "that the need for more or better supervision to protect against constitutional violations was obvious," from the fact that there "were repeated complaints of civil rights violations," and that "the complaints [were] followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, at *9 (S.D.N.Y. Sept. 27, 2012) (quotation marks omitted); *see also Lawrence v. City of Rochester*, No. 09-CV-6078, 2015 WL 510048, at *7 (W.D.N.Y. Feb. 6, 2015) ("Deliberate indifference may be inferred from the failure to train or supervise based on proof of repeated complaints of civil rights violations that are followed by no meaningful attempt on the part of the municipality to investigate or to forestall." (quotation marks omitted)); *Aretakis v. Durivage*, No. 07-CV-1273, 2009 WL 249781, at *29 (N.D.N.Y. Feb. 3, 2009) (same). However, cases where plaintiffs have successfully established deliberate indifference by pointing to previous grievances and suits involve pleadings that name and detail

the previous suits. *See Tieman*, 2015 WL 1379652, at *19–21 (holding that the plaintiff sufficiently alleged need for better training or supervision where the plaintiff listed and detailed nine other complaints raising similar allegations against same defendants); *McCants v. City of Newburgh*, No. 14-CV-556, 2014 WL 6645987, at *4–5 (S.D.N.Y. Nov. 21, 2014) (holding that the plaintiff sufficiently alleged need for better training or supervision where the plaintiff listed and detailed seventeen other complaints over a seven-year period raising similar allegations against the same defendants); *Farrow v. City of Syracuse*, No. 12-CV-1401, 2014 WL 1311903, *8 n.7 (N.D.N.Y. Mar. 31, 2014) (stating that the fact that "at least 15 excessive force complaints ha[d] been filed against the [c]ity in the past 5 years" would be sufficient to state a plausible failure to train case). Therefore, Plaintiff's conclusory allegation that Defendants knew about the poor food conditions because of other complaints, grievances, and lawsuits, without more, fails to plausibly allege a failure to train or supervise claim.

Accordingly, Plaintiff's claims against Aramark must be dismissed, as must any claims against the individual Defendants in their official capacities. *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*, No. 11-CV-8876, 2016 WL 4540837, at *7 (S.D.N.Y. Aug. 29, 2016) (dismissing the plaintiff's claims against municipal employees in their official capacities where the complaint "provided no facts that would allow [the court] to plausibly infer that [the defendants] acted pursuant to a municipal custom or practice").

### 2. Personal Involvement

Defendants argue that the claims against Blackman, Flax, Boissy, and Mendoza in their individual capacities should be dismissed because Plaintiff fails to allege they were personally involved in any unconstitutional acts against him beyond a mere alleged awareness of poor food conditions. (Defs.' Mem. 11–13.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, a plaintiff must plausibly allege that a defendant's actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff alleges that Blackman, Flax, Boissy, and Mendoza knew of the poor food quality and failed to remedy the issue, and that Delgrosso, Vollmer, Blackman, Boissy, Mendoza, and Azim "conspired amongst each other to cover [up] the food deprivation occurring at [WCDOC]

13

by lying [in grievance] responses [and] [n]ot conducting proper [i]nvestigations into food related claims." (Compl. 7.) Although these general allegations are meant to suggest that each individual defendant was aware of the food quality issues and ignored them, "Plaintiff does not provide facts alleging *what* [the individual defendants] knew about the [poor] food problem or *when* they knew about it." *Quick*, 2019 WL 1083784, at *5 (dismissing claims against individual defendants where the plaintiff failed to allege specific facts that showed that the defendants "were responsible for a policy or custom on food preparation, training, or supervision; were grossly negligent in supervising employees responsible for food preparation, or were deliberately indifferent to a food preparation problem"); *Constant v. Annucci*, No. 16-CV-3985, 2018 WL 1684411, at *4 (S.D.N.Y. Apr. 5, 2018) (holding personal involvement not satisfied where the "allegation merely states, in conclusory terms, that [the supervisory defendants] subjected [the plaintiff] to the conditions complained of"); *Bridgewater v. Taylor*, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011) (holding personal involvement not satisfied where the plaintiff made conclusory claims that a supervisory official failed to provide proper training and supervision or created a policy). Moreover, Plaintiff does not allege that any of the individual Defendants participated directly in the preparation or distribution of food at all (let alone in the preparation or distribution of the particular food at issue), established a policy or custom that allowed for rotten food to be provided to inmates, failed to follow a policy or custom on food preparation, or were otherwise grossly negligent in allowing others to prepare food without following proper procedures. That Mendoza is the Aramark Food Service Director, Flax the Aramark Food Services Manager, Blackman the Aramark Director, and Boissy the Aramark Line Supervisor also does not change the analysis, because a defendant "cannot be held liable for the service of rotten [food] based on a respondeat superior theory." *Quick,* 2019 WL 1083784, at *4 (citations omitted); *see also*

14

*Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014) ("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct." (citations omitted)). There are, in sum, no alleged facts showing that Blackman, Flax, Boissy, or Mendoza were personally involved in the alleged unconstitutional deprivation at issue. *See Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the plaintiff failed to allege that the defendants were "present" for, "participated directly" in, or "somehow permitted" the alleged violation); *Webster v. Fischer*, 694 F. Supp. 2d 163, 179 (N.D.N.Y. 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.").

Accordingly, each of the claims against Defendants in their individual capacities must be dismissed.[5]

---

[5] Defendants also argued that Plaintiff's claims should be dismissed because (1) Plaintiff did not exhaust the grievance process before filing his claims, (Defs.' Mem. 7), (2) Plaintiff alleged only *de minimis* injuries for which he cannot recover under the Prison Litigation Reform Act (PLRA), (*id.* at 7–8), and (3) that Plaintiff did not allege facts sufficient to show an unconstitutional condition of confinement, (*id.* at 13–16). Because the Complaint must be dismissed for failure to state a *Monell* claim and failure to allege facts sufficient to show the personal involvement of the individual Aramark Defendants, the Court need not resolve these additional arguments. Plaintiff will have the opportunity to respond to these arguments if he decides to file an amended complaint.

## III. Conclusion

For the foregoing reasons, Moving Defendants' Motion To Dismiss is granted.⁶ Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice. Plaintiff may file an amended complaint within 30 days of the date of this Opinion. The amended complaint should contain appropriate changes to remedy the deficiencies identified in this Opinion. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint, and therefore must contain *all* of the claims, factual allegations, and exhibits that the Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 30), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED:  July 29, 2019
        White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

⁶ The Court notes that allegations nearly identical to Plaintiff's very concerning claims regarding poor food sanitation and quality have recently been raised in numerous other actions against Westchester County and Aramark in this District. *See, e.g., Crispin v. Westchester Cnty.*, No. 18-CV-7561, 2019 WL 2419661 (S.D.N.Y. June 10, 2019); *Hoffstead v. Aramark Corr. Servs., LLC*, No. 18-CV-2381, 2019 WL 1331634 (S.D.N.Y. Mar. 25, 2019); *Hanner v. Westchester Cnty*, No. 16-CV-7610, 2019 WL 1299462 (S.D.N.Y. Mar. 21, 2019); *Quick*, 2019 WL 1083784; *Mercedes v. Westchester Cnty.*, No. 18-CV-4087, 2019 WL 1429566 (S.D.N.Y. Mar. 29, 2019); *White v. Westchester Cnty.*, No. 18-CV-990, 2018 WL 6493113 (S.D.N.Y. Dec. 10, 2018); *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175 (S.D.N.Y. Mar. 30, 2018). The Court expects that Counsel for Defendants also takes note and will discuss the serious allegations raised in these cases with her clients.